FILED
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**

KELLEY LYNN-PRYOR,

           Plaintiff,

      vs.

DEPARTMENT OF DEFENSE EDUCATION
ACTIVITY, DIRECTOR THOMAS BRADY AND
JOHN DOES 1-10

          Defendant.

Case No. 3:21-cv-350-TJC-MCR

COMPLAINT FOR DISCRIMINATION AND RETALIATION

JURY TRIAL DEMANDED

Plaintiff, based upon information and belief, state as follows:

## I.   INTRODUCTION

**COMES NOW** the plaintiff, Ms. Kelley Lynn-Pryor, acting *pro se*, and for causes of action against the defendants, complains and alleges as follows:

## II.   PARTIES, JURISDICTION & VENUE

1. Plaintiff resides in Madison, Florida. The plaintiff has exhausted all administrative remedies and performed all conditions precedent to the maintenance of this action and is in all other respects fully qualified to maintain this action. See attached.

2. Defendant Department of Defense Education Activity (hereinafter referred to as "Defendant" or "DODEA") is a federal agency under the United States, having its principal office and place of business located at 4800 Mark Center Drive, Suite 04G12 Alexandria, VA 22350-1400.

3. Defendant Thomas Brady is the director and official Agency head, having his principal office and place of business located at located at 4800 Mark Center Drive, Suite 04G12 Alexandria, VA 22350-1400.

4.   John Does 1-10 are persons and/or companies yet to be identified who may in whole or in part be liable for all or part of the claims set forth herein as may be revealed in discovery or investigation and/or who may be found to be necessary parties to this action.

5.   Jurisdiction is conferred on the court by virtue of federal employees are entitled to a trial *de novo*. *See* 42 USC 2000e–16(d); 42 USC 2000e–5(f) through (k) and 29 USC 794a. Under the 1991 Civil Rights Act, the time for filing a civil action after a final agency decision or final decision of the Commission has been extended to 90 days. 42 USC 2000e–16(c). See attached EEOC notice.

6.   Venue in this court is appropriate pursuant to Title 28, U.S.C. §1391, because the plaintiff is a resident of Florida.

7.   Plaintiff asserts claims in violation of Title VII.

### III.   PROCEDURAL BACKGROUND

1.   On November 9, 2015, Complainant filed an EEO complaint alleging discrimination by the Agency on the bases of sex (female), age (51), and reprisal (engaging in prior protected EEO activity).

2.   On January 14, 2020, the Commission issued a Decision. Ms. Lynn–Pryor did not receive a copy of the decision until July 6, 2020; she now files this civil complaint.  See attached.

### IV.   BACKGROUND

1.   Plaintiff Ms. Kelley Lynn-Pryor served as a Teacher with the Department of Defense Education Activity's ("DoDEA") in the Japan District.

2.   Complainant was discriminated against based on her race (black) and in reprisal for her prior protected EEO activity (EEOC NO, 430-2017-00349X; AGENCY NO. 2001-0534-2016103856) when:

3.   From August 2016 through July 11, 2017, Ms. Gail Wiley, Principal of Kadena Elementary School (KES), Ms. Lorri Vallone, Assistant Principal of KES, and Ms. Katharine Bell, a teacher at KES,

2

subjected Complainant to harassment. Complainant provided the following incidents in support of her claim of harassment[1]:

    a.        From August 2015 to September 1 2017, Ms. Wiley has required Complainant to attend Continuous School Improvement (CSI) and faculty meetings.

    b.        On July 11, 2017, Ms. Wiley accused Complainant of child abuse.

    c.        From August 2016 to June 2017, Ms. Wiley conducted eight classroom observations in Complainant's classroom.

    d.        From August 2016 to June 2017, Ms. Bell denied Complainant access to Literacy School Support (LSS) eligibility data.

    e.        On May 12, 2017, Ms. Wiley issued Complainant a Notice of Proposed Removal and denied her request to have a union representative present during the meeting.

    f.        On May 5, 2017, Ms. Vallone went into Complainant's office and rummaged through Complainant's belongings without her permission.

    g.        On March 2, 2017, Ms. Vallone went into Complainant's office and rummaged through Complainant's belongings without her permission.

    2.        On December 1, 2017, Mr. Michael Thompson, Superintendent of the Pacific South District, issued a decision to suspend Complainant for fourteen days, effective December 3-16, 2017, for negligent performance of duty and failure to follow instructions.

Per an amendment request on March 20, 2018, the following additional issues were accepted for investigation:

---

[1] There is one additional claim under EEOC Case No.: 480-2018-00803X and Agency No.: PE-FY16-150. The claim relates to how Ms. Gail Wiley, Principal Kadena Elementary School, forced Complainant to take All Purpose Leave (APL) on August 23, and 24, 2016.

4.      On January 3, 2018, Mr. Thompson reassigned Complainant from her position as a kindergarten teacher at Kadena Elementary School, Pacific South District, Okinawa, Japan, to a kindergarten teacher position at Bechtel Elementary School, Pacific South District, and Okinawa, Japan.

5.      On February 15, 2018, Mr. Joel Grimm and Ms. Regina Florence, Assistant Principal of Bechtel Elementary School, informed Complainant that an allegation of child abuse had been lodged against her and required her to leave the school.

6.      On February 16, 2018, Mr. Joel Grimm, Principal of Bechtel Elementary School, assigned Complainant to work at the Pacific South District Office following an allegation of child abuse made against her.

IV.     **LEGAL PRINCIPLE—RETALIATION**

V.      **THEORIES OF LIABILITY**

A.      **RETALIATION**

Under § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), an Agency is prohibited from retaliating against an employee who either (1) opposes any action made unlawful by Title VII, or (2) participates in a Title VII activity, such as filing a charge, or participating in a proceeding under Title VII. In order to present a *prima facie* case of reprisal for prior EEO activity, a complainant must show that (1) she has engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding (*e.g.*, filing a discrimination charge); (2) the Agency was aware of the EEO activity; (3) the Agency treated her adversely contemporaneous with or subsequent to her EEO activity; and, (4) there is a causal connection between the protected activity and the adverse treatment. *See, e.g., Whitmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984).

Proof of the causal connection is best established by direct evidence of the Agency's retaliatory animus. However, proof of the causal connection can also be established indirectly by evidence of

4

circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action, *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339 (10th Cir. 1981), *cert. denied*, 459 U.S. 1071 (1982), or by disparate treatment of similarly situated employees. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir. 1989). To establish a causal connection, it must also be shown that the Agency had actual or imputed knowledge of the opposition or participation. *See, e.g., Rogers v. McCall*, 488 F. Supp. 689, 697-98 (D.D.C. 1980).

The "but for" causation standard established in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013) for Title VII retaliation claims does not apply to Title VII federal sector retaliation claims and, instead, the "mixed motives" standard set forth in the Civil Rights Act of 1991 applies to federal sector reprisal claims. *See Petitioner v. Department of the Interior*, EEOC Petition No. 0320110050 (July 14, 2014).

The temporal proximity between a complainant's EEO activity and the actions challenged in the complaint must be sufficiently close in time to support inferring a causal connection between complainant's prior EEO activity and the challenged actions. *See, e.g., Jackson v. U.S. Postal Service*, EEOC Appeal No. 0120063871 (April 26, 2007) ("'Generally, the Commission has held that nexus [between EEO activity and a challenged action] may be established if events occurred within one year of each other.'").

**B.    RETALIATORY HARASSMENT**

Under the Commission's broad view of harassment, a complainant may establish retaliatory harassment even where the harassment is not severe or pervasive. *See, e.g., Douglas v. U.S. Postal Service*, EEOC Appeal No. 0120090284 (April 10, 2009); *Burlington Northern and Santa Fe Railway Company v. White*, 548 U.S. 53 (2006) (finding that the anti-retaliation provision protects individuals from a retaliatory action that a reasonable person would have found "materially adverse," which in the retaliation context means that the action might have deterred a reasonable person from opposing discrimination or participating in the EEOC charge process); *see also Lindsey v. U.S. Postal Service*, EEOC Request No. 05980410 (November 4,

1999). The statutory retaliation clauses prohibit any adverse treatment that is based upon a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity. *Id.*

In *Small v. Postmaster General*, 0720100031 (2012), the Commission found a hostile based on retaliation where all of the actions were motivated by desire to retaliate against the complainant for requesting reasonable accommodation: "We find substantial evidence in the record to support the AJ's finding of reprisal. Complainant filed prior complaints against S1, S1 was aware Complainant had prior EEO activity as evidenced by the fact that she signed the June 2003 settlement agreement with Complainant, S1 agreed not to provide negative information if Complainant sought transfer to another facility and then followed Complainant to the new facility within a month of his transfer. Then, S1 failed to satisfy the Agency's obligation to provide reasonable accommodation. We agree with the AJ that S1's contentions for failing to provide accommodation are "unworthy of credence for a seasoned supervisor." We conclude that the timeline here, the history between Complainant and S1, and the adverse actions S1 took against Complainant support such a finding. Complainant testified that, over several years since 2004, S1 publicly referred to him as an overweight television character, tried to isolate him from his coworkers, subjected Complainant to greater scrutiny than other workers, sought a fraud investigation against Complainant regarding his workers' compensation absences, talked about Complainant and his EEO matters to others, made an unwanted visit to him while he recuperated at a hospital, rode by Complainant's house and had her husband do the same, controverted his workers' compensation claim with derogatory statements about his health and personal activities, and contacted Complainant's neighbor inquiring about his whereabouts. We find that hearing testimony, most notably testimony from S1 and other Agency officials, as well as documentary evidence support Complainant's contentions. Further, the record shows that S1 sought to remove Complainant from the carrier craft and Agency rolls. Consistent with the AJ, we consider these harassing incidents as background evidence for S1's retaliatory motive and agree that such motive was the basis of her denial of reasonable accommodation. In sum, we find that substantial evidence of record supports a finding of hostile work environment harassment based on reprisal."

## C.    HOSTILITY

As the First Circuit explained:

Given Congress's intention to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment, it makes sense to construe the qualifier (regarding "compensation, terms, conditions, or privileges of employment") broadly. On that basis, the verb "discriminate," as used in section 2000e-2(a)(1), logically includes subjecting a person to a hostile work environment . . . . Title VII's anti-retaliation provision . . . directs an employer not to discriminate against any employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."42 U.S.C. § 2000e-3(a). Here, the term "discriminate" appears without the qualifier. A familiar canon of construction teaches that a term appearing in several places in a statutory text is generally read the same way each time it appears. We apply that canon here. The result: the verb "discriminate" in the anti-retaliation clause includes subjecting a person to a hostile work environment.

The claims set forth above and the evidence provided in the Report of Investigation demonstrates there are genuine issues of material fact as to Ms. Lynn-Pryor's hostile work environment claims. Witness testimony reveals Ms. Lynn-Pryor was subjected to a hostile work environment based on the following criteria: (1) she belongs to a protected group (participated in EEO activity); (2) she has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the Agency is responsible for such environment under either a theory of vicarious or direct liability.

First, the Agency does not dispute that Complainant engaged in EEO activity and, therefore, is a member of a protected class under Title VII. Thus, the first element of Complainant's hostile work environment claim has been met. Regarding the second and third element of Ms. Lynn-Pryor's *prima facie case*, the evidence reveals that she suffered numerous acts of hostility. Complainant suffered with an ongoing period of time where she was bullied and intimidated by Lois Thompson, as carefully documented in the testimony of Complainant.

Regarding the fourth element of Ms. Lynn-Pryor's prima facie case, she has produced evidence that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and created a discriminatorily abusive working environment. This requirement, as defined by the Supreme Court,

7

contains both an objective and a subjective component. *Miller*, 277 F.3d at 1276, *citing*, *Harris*, 510 U.S. at 21-22. Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives . . . to be abusive. *Id.* In evaluating the objective severity of the harassment, the administrative judge should consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Miller*, 277 F.3d at 1276 and *Harris*, 510 U.S. at 21-22. The Supreme Court has adopted a totality of the circumstances approach and thus failure to prove one factor is not fatal to Complainant's case. *Id.*

The claims set forth in the complaint reveal an ongoing pattern of hostility which, if proven to be true at hearing, show the requisite level of severity. See *Cervantes v. USPS*, EEOC Request No. 05930303 (November 12, 1993) and *Miller v. Department* of the Treasury EEOC Request No 05A10338 (August 15, 2002). The conduct unreasonably interfered with Ms. Lynn-Pryor's job performance. These despicable acts run the full gamut of hostility and retaliation and have physical elements of intimidation as well as more advanced forms of intellectual manipulation designed to influence, punish, isolate, and castigate Ms. Lynn-Pryor. She was repeatedly harassed and harangued, both publically and privately, by Mr. Thompson.

Ms. Lynn-Pryor was subjected to retaliatory harassment when she opposed discrimination by: (1) holding a meeting and warning her staff about harassment; (2) reading an agency policy about the prohibitions of workplace harassment; (3) filing an EEO Charge; and (4) filing a formal EEO complaint under § 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). See Deposition Testimony (DT) of Leroy Smith at pp 19, 20, 32-40. Ms. Lorri Blanchard testified in her deposition that Ms. Lynn-Pryor read the regulation in a meeting. Lorri Blanchard Dep at pp 28-30; 41-44, 52. Michael Pine admits he referred to his prior supervisor, Ms. Miller, as "Bitch for no reason;" see Dep of Michael Pine at pp 18-20. Also see Dep of Gayle Coyle at pp 88-91. EX A. It is undisputed that the portion of the regulation in question that the appellant emphasized was part of a "Schedule of Offenses and Guidelines for Penalties" that listed the possible disciplinary actions that could be

8

taken for "Making false, malicious, slanderous, defamatory, or unfounded statements against co-workers, supervisors, subordinates, or government officials that may/may not damage the reputation or undermine the authority of those involved." Pp 138 of 145.

Ms. Thompson acknowledges receipt of Ms. Lynn-Pryor's EEO activity on September 2, 2014 when the EEO charge was first filed. Thompson was aware that Ms. Lynn-Pryor had reported to him that she felt she was a victim of retaliation. IF at pp 56, 57. The prior EEO activity of Ms. Lynn-Pryor was closely followed by adverse action, *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339 (10th Cir. 1981), *cert. denied*, 459 U.S. 1071 (1982), and disparate treatment as compared to similarly situated employees. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir. 1989). Certainly, there is a "convincing mosaic" of retaliation against Ms. Lynn-Pryor. A careful review of the deposition testimony of Agency witnesses there is a "mosaic" of retaliation: (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at Ms. Lynn-Pryor and other bits and pieces from which an inference of retaliatory intent can be drawn; (2) evidence that other employees similarly situated to the Complainant have been better treated; and (3) evidence that the reasons given for the actions taken against Hill are pretext.

Ms. Lynn-Pryor has provided specific evidence sufficient for a reasonable person to find in her favor at this stage of the proceedings. *See, e.g., Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). The ROI and the declarations together establish genuine issues of material fact as would be admissible in evidence. *See* Federal Rules of Civil Procedure, Rule 56(e); *See also Green v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

An Agency is prohibited from retaliating against an employee who either (1) opposes any action made unlawful by Title VII, or (2) participates in a Title VII activity, such as filing a charge, or participating in a proceeding under Title VII. In *University of Texas Southwestern Medical Center v. Nassar,* 133 S. Ct. 2517 (2013), the U.S. Supreme Court held that the statutory language of § 704 of Title VII, which prohibits non-federal sector employers from taking adverse actions "because of" certain protected activity, requires an

9

elevated "but for" causation to establish liability for Title VII retaliation claims. However, the *Nassar* Court's "but for" standard does not apply to Title VII federal sector retaliation claims under § 717, in light of the fundamentally different meanings of the pertinent statutory language. Citing its earlier decision in *Gomez-Perez v. Potter*, 129 S. Ct. 1931 (2008), which focused on the broad federal sector nondiscrimination language of the ADEA (and Title VII) ("[a]ll personnel actions . . . shall be made free from any discrimination"), the *Nassar* Court distinguished this broad language from the narrower controlling section found under § 704 ("because of" opposition to and participation in protected activities). In addition, the pertinent federal sector regulation does not use "because of" language but rather states that a federal sector Complainant may prevail if the Complainant was "subject to retaliation for opposing any practice made unlawful by federal anti-discrimination law or for participating in any stage of administrative or judicial proceedings under the statutes." 29 C.F.R. § 1614.101(b). Because the statutory language in §§ 717(a) and 704 of Title VII is fundamentally different, and because the federal sector regulation does not require that an adverse action be "because of" retaliation, the *Nassar* Court's "but for" causation is not required in the federal sector, and instead the "mixed motives" standard set forth in the Civil Rights Act of 1991 applies to federal sector reprisal claims.

Ms. Lynn-Pryor presents a *prima facie* case of reprisal for prior EEO activity. She has produced evidence that (1) she engaged in protected activity in opposition to Title VII discrimination or participated in a Title VII proceeding (e.g., opposing the conduct of ISS personnel by reading the regulation and warning employees their vicious gossiping of fellow employees and their supervisors was illegal conduct; (2) Mr. Thompson was aware of Ms. Lynn-Pryor's opposition to discrimination and the EEO filing; (3) Mr. Thompson treated Ms. Lynn-Pryor adversely during and subsequent to her opposition to discrimination, including the filing of the EEO Charge by Ms. Lynn-Pryor; and, (4) there is a causal connection between the protected activity and the adverse treatment. *See, e.g., Whitmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984). Surely, these supervisors had actual or imputed knowledge of Ms. Lynn-Pryor's opposition to

discrimination and participation in EEO activity. Ms. Lynn-Pryor has met the first two prongs of his retaliation claim. There are also genuine issues of material fact as to the causal connection between Complainant's prior EEO activity and the claims in this case.

The prior EEO activity of Ms. Lynn-Pryor was closely followed by adverse action, *Burrus v. United Telephone Co. of Kansas, Inc.*, 683 F.2d 339 (10th Cir. 1981), *cert. denied*, 459 U.S. 1071 (1982), and disparate treatment as compared to a similarly situated employee; in this case, her comparator would be Assistant Superintendent Michael Johnson. See Dep. of Michael Johnson at 23-45. *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir. 1989). Certainly, there is a "convincing mosaic" of retaliation against Ms. Lynn-Pryor. A careful review of the deposition testimony of Agency witnesses there is a "mosaic" of retaliation: (1) evidence of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at Ms. Lynn-Pryor and other bits and pieces from which an inference of retaliatory intent can be drawn; (2) evidence that other employees similarly situated to the Complainant have been better treated; and (3) evidence that the reasons given for the actions taken against Hill are pretext. *See Decl. of Dr. Christine Hill.*

Ms. Lynn-Pryor is alleging a number of putative adverse employment actions, including the issuance of a Letter of Caution, Letter of Reprimand, pre-action investigations and the proposed removal and false disparaging statements. These actions, in the aggregate, rise to the level of material adversity required at the third step of a prima facie case.

Ms. Lynn-Pryor has also alleged a sufficient causal connection between the protected activity and adverse actions. Ms. Lynn-Pryor has done so principally by showing that her protected activity was closely followed in time by the adverse action. Ms. Lynn-Pryor's presentation of facts reveals a timeline of EEO activity and adverse actions that came very close in time thereafter. These facts plausibly establishes a causal relationship and a series of adverse actions plausibly evincing an intent to retaliate. Her detailed declaration and the supporting exhibits provide a timeline which supports the causal connection between her EEO activity and the adverse treatment that followed.

Given Congress's intention to strike at the entire spectrum of retaliation, which can include requiring a person like Ms. Lynn-Pryor to work in a discriminatorily hostile or abusive environment, it makes sense to construe what happen here as retaliatory harassment. Title VII's anti-retaliation provision directs an employer not to discriminate against any employee "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."42 U.S.C. § 2000e-3(a).

The Agency in this case is subject to vicarious liability for retaliation because supervisors had immediate (or successively higher) authority over Ms. Lynn-Pryor. See *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

The Agency has offered no legitimate justification for why Ms. Lynn-Pryor was treated so horribly.

**VI.    DAMAGES**

As a result of the actions of the defendants as alleged herein, the plaintiff has been damaged in an amount to be proven at trial.

**VII.    PRAYER FOR RELIEF**

Wherefore the plaintiff prays for an award of all or a portion of the following relief:

1.    That the pleadings conform to the proof at trial;

2.    That plaintiff be reinstated as an Assistant Superintendent and awarded lost wages and benefits;  and

3.    That the court award compensatory damages, pecuniary and non-pecuniary damages to the plaintiff against the defendants for discrimination on the basis of age, race, gender and retaliation in an amount to be proven at trial, pursuant to the provisions of law set forth herein.

March 25, 2021

KELLEY LYNN-PRYOR, Pro Se

12